NOT FOR PUBLICATION                                      (Doc. Nos. 19, 20, 21)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

———————————————————————
                                              :
JASON DEMENT,                                 :
                          Plaintiff,          :
                                              :        Civil No. 15-6107 (RBK/KMW)
                          v.                  :
TOWNSHIP OF HADDON;                           :
MARK CAVALLO; and                             :
JOHN DOES 1-10,                               :        **OPINION**
                          Defendants.         :
                                              :
———————————————————————

**KUGLER**, United States District Judge:

        This matter comes before the Court on Defendant Township of Haddon ("the

Township")'s Motion to Dismiss of (Doc. No. 19) and Defendant Mark Cavallo ("Cavallo")'s

Amended Motion to Dismiss (Doc. No. 21). In his First Amended Complaint, Plaintiff Jason

DeMent ("DeMent") asserts eight claims, including seven under the New Jersey Law Against

Discrimination ("NJLAD") and one claim under federal law, namely the Family and Medical

Leave Act ("FMLA"). For the reasons stated herein, Defendants' Motions to Dismiss will be

**GRANTED IN PART** as to Count 6.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

        This suit concerns circumstances surrounding DeMent's employment with the Haddon

Township Police Department, where he actively served as a police officer from April 2004 until

his suspension on June 12, 2015. First Amended Compl. ("FAC") ¶ 10 (Doc. No. 18). DeMent

_____

1. On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must
"accept all factual allegations as true and construe the complaint in the light most favorable to
the Plaintiff." *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Accordingly, for
purposes of this motion, the Court adopts and accepts as true the facts as pled in the Complaint.

suffers from Stargardt's Disease, a condition that causes the gradual deterioration of his visual acuity. *Id.* ¶ 12. For much of his tenure with the Township's police department, DeMent's condition had no impact on his ability to perform his duties successfully. *Id.* ¶ 14. DeMent consistently received excellent performance reviews prior to his suspension. *Id.* ¶ 11.

On June 12, 2015, DeMent met with Defendants to inform them of his condition and his ability and desire to continue serving as a police officer. *Id.* ¶ 24. DeMent requested that Defendants accommodate him with modified work duty until he could undergo treatment in a clinical trial on a future date. *Id.* ¶ 25. DeMent previously performed periods of light duty because of an unrelated injury and believed that he could be useful to the department in such a capacity again.[2] Although he was adamant that he was able and willing to perform such light duty, he did inform Defendants that a medical leave of absence may be necessary in the future so he could undergo treatment in a clinical trial. *Id.* ¶ 28. Defendants declined to afford DeMent modified work duty and suspended him without pay on June 12, 2015. *Id.* ¶¶ 30-31. DeMent began using the paid time off ("PTO") that he had previously accrued. *Id.*

Shortly thereafter, DeMent met with Dr. Carl D. Regillo ("Dr. Regillo"), a physician at Wills Eye Hospital. *Id.* ¶ 32. Dr. Regillo confirmed that DeMent could continue working but should refrain from driving at night or in unfamiliar areas and also expressed the possibility that future stem cell treatment could improve his vision acuity. *Id.* ¶¶ 33-34. DeMent provided Dr.

---

2. Around December 2012, Plaintiff injured his shoulder on the job and had to undergo multiple surgeries. He received modified work duty for various periods from December 2012 to March 2014, totaling approximately nine months. His duties included "walk-in reports, phone calls, warrant committals, arrest processing, report purging, car titles, [o]rdinance enforcement, vehicle maintenance, equipment grants, agency training of new officers, and firearm investigations." Compl. ¶¶ 15-16.

Regillo's findings to Defendants, but they again declined to allow him to return to work with modified duties. *Id.* ¶¶ 35-36.

DeMent continued to request that he be allowed to return to work with temporary accommodations, *Id.* ¶¶ 37-42, but Defendants were concerned that providing DeMent with accommodations would require them to do so for every officer who thereafter was injured off duty. *Id.* ¶ 43. On August 5, 2015, Defendants informed Plaintiff that he was being placed on involuntary FMLA leave immediately and would be terminated after October 28, 2015. *Id.* ¶ 47.

During his tenure with the Haddon Township Police Department, Plaintiff was allegedly sexually harassed by Defendant Cavallo. *Id.* ¶¶ 40, 51, 57. Cavallo's treatment of Plaintiff included inappropriate touching, sexual advances, and inappropriate text messages. *Id.* Plaintiff believes that he was ultimately denied accommodations because he did not reciprocate Cavallo's sexual advances. *Id.* ¶¶ 51, 58.

On August 10, 2014, Plaintiff filed the instant suit against the Township and Chief Cavallo. Compl. (Doc. No. 1). Plaintiff filed his First Amended Complaint on February 29, 2016. In his FAC, Plaintiff brings multiple claims under the New Jersey Law Against Discrimination, including claims for sexual harassment (Count One), failure to provide reasonable accommodations (Count Two), wrongful termination because of his disability (Count Three), wrongful termination because of the perception of his disability (Count Four), retaliation for alleging discrimination based on his disability (Count Five), wrongful termination because of his complaints of sexual harassment (Count Seven), and refusal to provide accommodations because of his complaints of sexual harassment (Count Eight). He also brings a claim for interference and wrongful discharge/retaliation/discrimination under the Family and Medical Leave Act (Count Six).

3

Defendants moved to dismiss Counts Two through Eight of Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6) on March 14, 2016. Having been briefed by the parties, the issues are now ripe for the Court's review.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips*, 515 F.3d at 233)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are unnecessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

### A. Violations of the Family and Medical Leave Act (Count Six)

The FMLA is meant, in part, "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). As such,

> the FMLA creates a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions which set floors for employer conduct. Eligible employees "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of such employee." 29 U.S.C. § 2612(a)(1)(D). Following a qualified absence, the employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions. 29 U.S.C. § 2614(a)(1).

*Figueroa v. Merritt Hospitality, LLC*, No. 11-1807, 2011 WL 4389585, at *3 (D.N.J. Sept. 21, 2011) (quoting *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (internal citation omitted)).

#### Involuntary Leave Claim

To state an involuntary leave/interference claim, "a plaintiff must plead that: (1) she was an eligible employee under the FMLA; (2) the defendant-employer was subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied the benefits to which

5

she was entitled under the FMLA." *Figueroa*, 2011 WL 4389585, at *3 (citing *Weisman v. Buckingham Twp.*, No. Civ. A. 04-cv-4719, 2005 WL 1406026, at *4 (E.D. Pa. June 14, 2005)). In other words, "[t]o succeed on an interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009) (alteration in original) (quoting *Erdman v. Nationwide Ins. Co.*, 510 F. Supp. 2d 363, 370 n.4 (M.D. Pa. 2007)).

> DeMent's FMLA interference claim is summarized as follows:
>
> > [b]y forcing Officer DeMent into an FMLA leave and by stating that no other accommodation or time off would be provided, Defendants interfered with Plaintiff's entitled right to take a protected medical leave when he actually required it in the future, i.e. when he underwent the stem cell transplant procedure(s).

FAC ¶ 46. In other words, DeMent raises an "involuntary leave" claim, which the Third Circuit has not yet recognized as a cause of action.[3] *See Figueroa*, 2011 WL 4389585, at *3 (declining to address the involuntary leave claim in light of other pleading deficiencies). Other Circuit Courts have addressed FMLA claims under an involuntary-leave theory. For example, the Sixth Circuit in *Wysong v. Dow Chemical Co.*, noted that an involuntary leave claim is "really a type of interference claim" which "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." 503 F.3d 441, 449 (6th Cir. 2007); *see also*, *Walker v. Trinity Marine Prods., Inc.*, 721 F.3d 542, 544-45 (8th Cir. 2013) ("In our view, if forced leave can amount to interference with a right provided under the FMLA, it can do so only if the employer's action

---

3. The Court notes that there are no apparent cases addressing this matter from the Third Circuit since the *Figueroa* Court conducted a similar search in 2011. Defendants also note that the Third Circuit has not recognized such a claim. *See* Twp.'s Br., at 16 (Doc. No. 19-1).

prevents the employee from using benefits to which she is entitled under the Act."); *Grace v. Adtran, Inc.*, 470 Fed. App'x. 812, 814 n.3 (11th Cir. 2012) (noting that appellant failed to demonstrate a ripe FMLA claim based on the holding in *Wysong*).

Like the court in *Figueroa*, the Court finds that it need not address the viability of DeMent's "involuntary leave" claim because he has not successfully plead the aforementioned elements of an interference claim. DeMent has not plead that he was denied the benefits to which he was entitled under the FMLA because, in notifying Defendants that he *may* need future FMLA leave, he was not requesting a specific future leave. "At most [he] was anticipating . . . the likelihood of needing to request FMLA leave in the future sometime." *Figueroa*, 2011 WL 4389585, at *3. In sum, despite DeMent's alleged unsavory treatment at the hands of Defendants, he has not sufficiently plead that the alleged involuntary leave interfered with any of his rights under the FMLA.

Furthermore, even under the test articulated in the Sixth Circuit, DeMent has not plead a ripe claim for involuntary leave. First, he has not plead that he does not suffer from a serious health condition, so it is not clear that his employer forced him to take leave in the absence of a serious health condition. Second, even if his limitations are not considered a serious health condition, his claim has not ripened because he has not been denied FMLA leave at a later date as a result of his involuntary leave.

### *Wrongful Termination/Retaliation/Discrimination*

As a threshold matter, Plaintiff argues that Defendant has failed to raise an argument to dismiss his amended FMLA as to wrongful termination based on discrimination and retaliation and that it would be unfair for Defendants to make an argument regarding this portion of the claim for the first time in their reply brief. Pl.'s Opp'n Br., at 19-20 (Doc. No. 23); FAC ¶ 163.

Defendants correctly note that they did, in fact, address the FMLA wrongful termination/retaliation claim in their initial motion to dismiss. Twp.'s Reply Br., at 8-9 (Doc. No. 24); Twp.'s Br., at 2, 15.

Unlike FMLA interference claims, the Third Circuit has addressed the requirements to make out a FMLA retaliation claim.[4] The Third Circuit has stated that a plaintiff must prove that "(1) []he invoked h[is] right to FMLA-qualifying leave, (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012) (citing *Erdman*, 582 F.3d at 508-09 (modifying *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004))). The Court finds the comparison between the instant case and *Erdman* instructive. The plaintiff's claims in *Erdman*, which also raised both interference and retaliation claims under the FMLA, are notably different from DeMent's claims. The *Erdman* plaintiff submitted paperwork to request FMLA leave to which she was entitled, but was fired before the leave was scheduled to begin. The Third Circuit held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." 582 F.3d at 509. Here, DeMent received FMLA leave—albeit involuntarily—and was not terminated prior to taking his leave. As discussed above, Plaintiff did not invoke his right to FMLA-qualifying leave, but rather, told his employer that FMLA-qualifying leave would be requested in the future.

---

4. The Court notes that discrimination and retaliation are two names for the same claim in the FMLA context. *See Medley v Cty. of Montgomery*, No. 12-1995, 2012 WL 2912307, at *1 n.1 (E.D. Pa. July 17, 2012). The Court also notes that wrongful termination is a means of retaliation under the FMLA. *See Capilli v. Whitesell Const. Co.*, 271 Fed. App'x 261, 264-65 (3d Cir. 2008)

Accordingly, the Court dismisses DeMent's FMLA claim as to both interference and discrimination/retaliation/wrongful discharge.

**B.  State Law Claims**

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Plaintiff's sole claim under federal law has been dismissed, and there is no affirmative justification for this Court to retain supplemental jurisdiction over the state law claims this early in the litigation. As such, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Counts One through Five and Counts Seven and Eight are therefore dismissed without prejudice.

**IV.  CONCLUSION**

For the reasons stated herein, Defendant Township of Haddon's Motion to Dismiss (Doc. No. 19) and Defendant Mark Cavallo's Amended Motion to Dismiss (Doc. No 21) are **GRANTED IN PART** as to Count Six. Count Six is **DISMISSED**. Counts One, Two, Three, Four, Five, Seven, and Eight are **DISMISSED WITHOUT PREJUDICE**. All Counts against John Doe Defendants 1-10 are **DISMISSED WITHOUT PREJUDICE**.


Dated:    11/17/2016                                          s/Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge